INZER, Justice:
This is an appeal by Mrs. Juanita L. Farmer from a judgment of the Circuit Court of Pike County awarding her damages in the amount of $2,109.14 for personal injuries sustained as a result of her automobile being struck from the rear by an automobile driven by appellee, Mrs. Elizabeth Smith.
The only assignment of error that merits discussion is that the trial court was in er *353 ror in overruling appellant’s motion for a new trial on the ground that the damages awarded are so grossly inadequate as to evidence bias, passion and prejudice on the part of the jury.
The accident happened on November 28, 1964 at the intersection of Southern Avenue and Ronie Street in the City of Hat-tiesburg. Appellant stopped her vehicle at the intersection in obedience to a red traffic light. Appellee was following appellant in her car and, failing to stop, her car struck the left rear of appellant’s car. Appellee testified that she looked down momentarily and when she looked up, Mrs. Farmer had stopped for the red light. She immediately applied her brakes and turned her vehicle to the left in an attempt to avoid striking Mrs. Farmer’s car. However, she was unable to stop and her vehicle struck the car. The damage to Mrs. Farmer’s car was not extensive.
The trial court peremptorily instructed the jury that appellee was guilty of negligence and that appellant was entitled to recover for any damages she suffered as a result of the accident.
Appellant alleged in her declaration that she suffered severe, permanent injuries as a result of the accident. She sought to recover for actual and punitive damages. However, she does not now contend that she is entitled to punitive damages. Mrs. Farmer, a registered nurse, was 49 years of age at the time of the trial. She testified that for the past seven years she had been employed by Dr. Grady Cook and also at the Forrest General Hospital. She worked for Dr. Cook until three o’clock in the afternoon and then she worked an eight hour shift at the hospital as a nurse in the emergency room. She received $340 a month as salary from Dr. Cook and was paid $17 a day for five days a week at the hospital.
She testified that she had stopped for the red light and had her brakes on at the time the car was struck from the rear. The force of the blow caused her body to go forward and her head was snapped backward and then forward. She said' she blacked out momentarily. When Mrs. Smith came to the car and asked her if she was hurt, she told her that her head was hurting but that she did not think that she was hurt. She then got out of the car and went to a house nearby to telephone her husband. No one was at home and she then walked back about a block and a half to the clinic where Dr. Cook had his office and she called her husband. She rode back to the scene of the accident with one of the doctors who had an office in the clinic. After staying there for a few minutes she drove her car to her home. She stated that before she reached her home she started feeling sick and as soon as she got home she started vomiting. She stayed there a few minutes and then went to the hospital. She went into the emergency room where she was X rayed. During this time she was nauseated and in severe pain.
Dr. Cook was called and he saw her about 2 P.M. He said that she gave a history of having been in an accident where her car was struck from the rear which caused her head to be jerked backward and then forward. She was complaining of pain in her head, lower back, abdomen and in the interior chest. His examination revealed a bruise on the right side of her head. Her neck was stiff and she had muscle spasms in her neck, particularly over the second cervical vertebra. She had some tenderness over the chestbone and tenderness in the upper part of the abdomen and it was slightly extended. She also had tenderness over the fifth lumbar vertebra with muscle spasms which made the lumbar back region fairly rigid. Dr. Cook examined the X-rays and did not find any evidence of a fracture or dislocation. He found some evidence of minimal arthritic changes which was consistent with her age.
Dr. Cook said he ordered Mrs. Farmer to be put to bed in the hospital and pre *354 scribed drugs to stop the nausea and she was given intravenous fluid. She was placed in traction and immobilized. On the third day, he found her to be much better with less pain in- her neck. She also complained of blurred vision. He allowed her to go home from the hospital on December 2, but required her to stay in bed at home using traction. She continued to complain of pain and nausea. She was also complaining of pain in the area of the right sacroiliac joint and was given injections of long-lasting local anesthetic. He also prescribed muscle relaxants and tranquilizers. She continued to have some dizziness and blurred vision. He referred her to an ophthalmologist who found that she needed her glasses changed.
Dr. Cook testified in minute detail regarding Mrs. Farmer’s condition and his findings, but it would serve no useful purpose to detail all his testimony. It is sufficient to say he stated that Mrs. Farmer was able to return to work for him on a part-time basis on January 4, 1965 and worked part-time until the first week in February when she resumed full-time work. He said Mrs. Farmer gradually improved and she went to work one day a week at the hospital in April. He did not know when she resumed her full-time duties at the hospital. She continued to have a limp caused by pain in the lower right sacroiliac region. Dr. Cook had her see Dr. Charles Neill, a neurologist, because he suspected that Mrs. Farmer had a ruptured disk. However, Dr. Neill could not confirm this diagnosis. Dr. Cook stated that he was still of the opinion that Mrs. Farmer has a ruptured disk and in his opinion she has a ten percent overall disability.
As a result of the accident, Mrs. Farmer had incurred at the time of the trial medical expense in the amount of $788.11. She testified that she paid $134.60 to have her car repaired. However, the court properly excluded this item because she did not prove that these repairs were made necessary by the accident and the charge therefor was reasonable.
In addition to her medical expense, Mrs. Farmer testified that she lost wages as a result of the accident in the total amount of $2,448.86. This consisted mainly of time lost from the work at the hospital. Although she was able to work full-time for Dr. Cook early in February, she testified that she was unable to resume her full-time duties at the hospital until June. She was corroborated to some extent in this regard by Dr. Cook, although he did not specifically say that she was unable to resume full-time duty at the hospital until June. In fact he did not know when she resumed full-time work at the hospital. There was no direct testimony to contradict Mrs. Farmer relative to her ability to return to work sooner. However, it is apparent from the amount of the verdict in this case that the jury evidently was of the opinion that she could have returned to full-time duty sooner. The question then arises as to whether the jury had the right to discount the testimony -of Mrs. Farmer and her doctor relative to the nature and extent of her injury when there was no direct testimony to contradict them.
There are certain things the jury could and probably did take into consideration in considering the evidence of Dr. Cook. It had the right to consider the relationship between Dr. Cook and Mrs. Farmer. Theirs was not the usual relationship of doctor and patient, but it was much more. It was a close association of a doctor and a nurse over a long period of time. Then, too, the jury saw and heard Dr. Cook testify and was in a position to judge whether or not he was an interested witness. A reading of his testimony leaves the distinct impression that he was an interested witness.
Then there are contradictions and deficiencies in the evidence that the jury could consider. Mrs. Farmer alleged that damage to her eyes was a result of the accident, but Dr. Cook referred her to an ophthalmologist who stated that Mrs. Farmer only needed her glasses changed. Dr. Cook also testified that in his opinion *355 she had a ruptured disk, but admitted on cross-examination that he referred her to a neurologist who could find no clinical evidence of a ruptured disk. This neurologist reported that he expected Mrs. Farmer’s complaints to clear up spontaneously. Dr. Cook also stated on cross-examination that he found no evidence of such an injury from the X-rays that he made.
Mrs. Farmer also alleged that she has an extreme nervous and emotional condition as a result of her injury. However, the proof showed that she had a hysterectomy about a year and a half before the accident and prior to that time she had undergone an operation to remove a cyst from her left breast. This evidence could have been considered by the jury in connection with her claim of being nervous.
These were matters which the jury could and no doubt did take into consideration in arriving at the amount of its verdict in this case. The fixing of damages in a personal injury case is a difficult thing to do and we have said in numerous cases that this is primarily the province of the jury and that we should not disturb the verdict of the jury unless the amount is so excessive or so small as to be against the great weight of the evidence and shows the verdict is the result of passion, prejudice and bias. The foregoing rule is so firmly established in our jurisprudence that it is unnecessary to cite any of the numerous cases so holding.
 The principal thrust of appellant’s argument is that she proved actual or special damages in excess of the amount of the verdict and that this of itself is evidence of the jury’s failure to follow the instructions of the court in considering the evidence presented on the question of damages, making it evident that the verdict of the jury was the result of bias, passion and prejudice. As we have heretofore pointed out, most of the special damage she claims to have suffered was the loss of wages at the Forrest General Hospital. We do not think that the jury was bound to accept without question her testimony on this point. It is also significant that this same contention was made in a motion for a new trial. The trial judge who heard the testimony and observed Mrs. Farmer and the other witnesses was of the opinion that the verdict of the jury was not so inadequate as to evidence bias, passion and prejudice on the part of the jury. While we are not bound by his decision, it is almost a universal rule that his action upon a motion for new trial on the ground of inadequacy of the verdict will be favorably considered on appeal and will be upheld unless manifest error appears or we can say that he abused his discretion. We have carefully considered the evidence in this case, and while we think the verdict of the jury is small and we are not completely satisfied with it, we are unable to say with confidence that the amount of damages is so inadequate as to evidence bias, passion and prejudice on the part of the jury.
After carefully considering all the evidence in this case and the instructions to the jury, we find that the record in this case is remarkably free of error and for the reasons stated, we are of the opinion that this case should be affirmed.
Affirmed.
GILLESPIE, P. J., and RODGERS, PATTERSON and ROBERTSON, JJ., concur.